In the Matter of ANNA MATSON, an Inmate of Brooklyn State Hospital.

CLARENCE H. BELLINGER, as Superintendent of Brooklyn State Hospital, Appellant.

BROOKLYN CITY SAFE DEPOSIT COMPANY et al., Respondents.

Argued October 10, 1944; decided November 30, 1944.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Louis E. Cooper* and *Saul A. Shames* of counsel), for appellant. I. In the absence of knowledge as to the nature and extent of the property of an inmate confined to a State institution, the court would be in no position, in a proceeding for the appointment of a committee, to determine (1) whether there is sufficient property to justify the appointment of a committee; (2) what the amount of the committee's bond should be; or (3) what provision to make for the maintenance and education of the inmate. The inspection authorized by the statute is, therefore, not only reasonable but essential for the proper protection of the inmate's rights. (*Matter of Andrews,* 192 N. Y. 514; *Moore* v. *Flagg,* 137 App. Div. 338; *Matter of Baekeland,* 266 App. Div. 1012; *Matter of Wiesenberg,* 253 App. Div. 655; *Matter of Ackermann,* 226 App. Div. 811; *Montana Company* v. *St. Louis Mining &c. Co.,* 152 U. S. 160.) II. Section 51-a of the Mental Hygiene Law does not violate any provision of the Federal or State Constitutions, and is a valid exercise of the police power of the State. Specifically, there is no violation of (1) the due process or equal protection clauses, (2) the prohibition against unreasonable searches and seizures, or (3) the contract clause. (*Matter of Fay,* 291 N. Y. 198; *Montana Com-*

pany v. *St. Louis Mining &c. Co.,* 152 U. S. 160; *Headley* v. *City of Rochester,* 272 N. Y. 197; *Anderson Nat. Bank* v. *Luckett,* 321 U. S. 233; *Hurtado* v. *California,* 110 U. S. 516; *Stebbins* v. *Riley,* 268 U. S. 137; *Bryant* v. *Zimmerman,* 278 U. S. 63; *Buck* v. *Bell,* 274 U. S. 200; *People* v. *DeCesare,* 220 Mich. 417; *Boyd* v. *United States,* 116 U. S. 616; *Carples* v. *Cumberland Coal and Iron Co.,* 240 N. Y. 187; *Sporza* v. *German Savings Bank,* 192 N. Y. 8; *Matter of Evans* v. *Berry,* 262 N. Y. 61; *Chamberlin, Inc.,* v. *Andrews,* 271 N. Y. 1; *Home Bldg.. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Manigault* v. *Springs,* 199 U. S. 473; *Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69; *Oshkosh Waterworks Co.* v. *Oshkosh,* 187 U. S. 437.)

*Ralph W. Crolly* and *William H. Orr* for respondents. Special Term correctly held that section 51-a of the Mental Hygiene Law violates section 10 of article I and Amendment XIV of the Federal Constitution and sections 6 and 12 of article I of the State Constitution. (*People ex rel. Equitable L. Assur. Soc.* v. *Pierce,* 104 Misc. 343; *Brayman* v. *Grant,* 130 App. Div. 272; *Finch* v. *Goldstein,* 245 N. Y. 300; *Hoff* v. *State of New York,* 279 N. Y. 490; *Matter of Stephanis,* 250 App. Div. 253; *People ex rel. Klesitz* v. *Mills,* 179 Misc. 58; *Sullivan* v. *Whitney,* 25 N. Y. S. 2d 762; *Quarterman* v. *Quarterman,* 179 Misc. 759.)

LEWIS, J. A direct appeal (Civ. Prac. Act, § 588, subd. 4) brings to us for review an order of Special Term which declared unconstitutional section 51-a of the Mental Hygiene Law (L. 1942, ch. 747, § 2).

The proceeding arose from the following facts: In accord with a commitment order by a Justice of the Supreme Court dated October 19, 1943, the respondent, Anna Matson, became a patient at Brooklyn State Hospital, an institution maintained by the State under the jurisdiction of the Department of Mental Hygiene. The fact appears of record — without denial in the patient's behalf by the attorney designated by Special Term to represent her — that " the condition of the said patient is poor, she is confined to bed and that there is no possibility of a parole being considered or contemplated."

Six years prior to her commitment the patient had rented a safe deposit box from the respondent Brooklyn City Safe

Deposit Company under a written lease conditioned as follows: "1. No person other than the Renter or registered Attorney, or legal representative (in case of the death, insolvency, or other disability of the Renter), shall have access to a safe."

On March 2, 1944, the Superintendent of the State Hospital petitioned the Supreme Court for an order under section 51-a of the Mental Hygiene Law directing the Safe Deposit Company to permit an authorized representative of the Department of Mental Hygiene to open the patient's safe deposit box and, in the presence of an officer or representative of the Safe Deposit Company, to make an inventory of its contents and copies of any papers contained therein. The petition also recited the failure by the hospital superintendent to find next of kin of the patient and stated the purpose of the application to be to discover " any property owned by the said inmate * * * which would warrant the making of an application for the appointment of a committee ".

Following the granting of such application *ex parte* the Safe Deposit Company, upon notice to the Attorney-General and to the patient, secured at Special Term the order, now before us, which vacated the prior *ex parte* order directing that the patient's safe deposit box be opened and its contents inventoried. Such vacatur was ordered upon the ground that section 51-a of the Mental Hygiene Law violates the following constitutional provisions: the clause in the Federal Constitution which forbids enactment by a State of a law impairing a contract obligation (art. I, § 10); the clause in the State Constitution which forbids unreasonable search and seizure (art. I, § 12) and the due process clause in the Federal Constitution (Amendt. XIV) and that of the State (art. I, § 6).

The challenged statute provided, prior to its amendment by section 29 of chapter 666 of the Laws of 1944: " § 51-a. *Discovery of property warranting application for appointment of committee.* For the purpose of discovering property owned by any patient or inmate of a state institution in the department which would warrant the making of an application for the appointment of a committee for such patient or inmate, the supreme court or a justice thereof and a county court or a judge thereof, upon the duly verified application of the superintendent of the institution wherein such patient or inmate is confined, made without notice

or upon such notice to such persons or corporations as such court, justice or judge may require, whereby it is satisfactorily shown that a bank, trust company, safe deposit company, or other person, firm or corporation has in its or his possession or under its or his control papers belonging to such patient or inmate or that such patient or inmate has leased a safe deposit box or that he had access to a safe deposit box which may contain papers and property belonging to him, may make an order directing such bank, trust company, safe deposit company, or other person, firm or corporation to permit such superintendent or a duly authorized representative named in the order to examine and make an abstract of any such papers and to open, examine and make an inventory of the contents of any such safe deposit box in the presence of an officer or representative of such bank, trust company, safe deposit company or other person, firm or corporation."

We do not think the jurisdiction thus given to courts and judicial officers designated in the statute violates either Federal or State Constitution. The language of the Act does not permit of a deprivation of property without due process of law. "What is due process in a procedure affecting property interests must be determined by taking into account the purposes of the procedure and its effect upon the rights asserted and all other circumstances which may render the proceeding appropriate to the nature of the case." (*Anderson Nat. Bank* v. *Luckett*, 321 U. S. 233, 246.) By the statute here involved no seizure of property is authorized. Within the narrow limits of authority fixed by the Act and in accord with the language employed, which is declaratory of its purpose, the statute permits no more than the discovery of property. If, as in the present case, a patient's safe deposit box is the subject of discovery, an inspection of its contents is authorized for the purpose of ascertaining property therein which may warrant the appointment of a committee. An inspection so limited in scope is not a denial of due process. (*Headley* v. *City of Rochester*, 272 N. Y. 197, 205; *Montana Company* v. *St. Louis Mining &c. Co.*, 152 U. S. 160, 169; *Anderson Nat. Bank* v. *Luckett, supra*, 246-7.)

Nor does the statute conflict with the prohibition in the State Constitution against " unreasonable searches and seizures ".

Here, the inspection authorized is in aid of a civil proceeding which was designed to *conserve* any property which might be possessed by an incompetent. In the circumstances disclosed by the present record such an inspection, as we view it, is not an unwarranted intrusion and is in no sense " unreasonable ". (*Carples* v. *Cumberland Coal & Iron Co.*, 240 N. Y. 187, 193–4.)

We also find ourselves in disagreement with the ruling at Special Term that to proceed with discovery under the statute in question will impair the obligation of the contract between the patient and the Safe Deposit Company. The Legislature has devised a statutory scheme to control the person and safeguard the property of an incompetent. In Article 5 of the Mental Hygiene Law are provisions designed to accomplish the care and treatment of incompetents. In Article 81 of the Civil Practice Act are provisions vesting in the courts jurisdiction of the custody of the person and the care of the property of a person incompetent to manage himself or his affairs. (§ 1356.) In exercising its jurisdiction the court " * * * must preserve [an incompetent's] property from waste or destruction; and, out of the proceeds thereof, must provide for the payment of his debts and for the safe keeping and maintenance, and the education, when required, of the incompetent person and his family." (§ 1357.) The court's jurisdiction is exercised through a committee of either the person or property, or both, of the incompetent, such committee being required to furnish a fidelity bond before entering upon the performance of his duties. (§§ 1358, 1358-a, 1375, subds. 1, 4.) Where, as in the present case, the incompetent person is a patient in a State institution under an order of commitment by a court the petition for the appointment of a committee may be presented by the superintendent of the institution where the incompetent is confined. Such petition must contain among other data the name and residence of the next of kin of the incompetent living within the State, so far as known to the petitioner, and a statement of " the nature, extent and income of his property, so far as the same is known to the petitioner, or can with reasonable diligence be ascertained by him." (§ 1374, subds. 1, 2.)

In the proceeding at bar the record warrants the assumption that the condition of the respondent inmate is such that there is no possibility of her parole being considered; that the peti-

tioner has been unable to locate her next of kin and that she has the right of use, under a written lease, to a safe deposit box maintained by the respondent Safe Deposit Company.

Those circumstances were presented by the petitioner in this proceeding to a court which, as we have seen, is under the statutory duty to preserve an incompetent's property from waste or destruction and, out of the proceeds thereof, must provide for the payment of her debts and for her maintenance. (Civ. Prac. Act, § 1357.) We think those circumstances made appropriate the exercise by Special Term of the jurisdiction granted by section 51-a of the Mental Hygiene Law as a means of ascertaining what property, if any, the patient's safe deposit box contains. If property is there of sufficient value to warrant such action, the petitioner may apply for the appointment of a committee. (Civ. Prac. Act, § 1374, subds. 1, 2, 5-a.) If the value of the contents does not exceed $500 such contents may be turned over to the director of the State institution where the patient is confined, without the appointment of a committee. (Mental Hygiene Law, § 34, subd. 14.) In either event we regard the discovery sought by this proceeding as an appropriate and essential step in the ascertainment and preservation of the patient's property for the benefit of her estate and as a source of reimbursement to the State for care and maintenance afforded her. The inspection sought, being in the public interest, it may not be said that its accomplishment will violate the contract clause of the Federal Constitution. Upon its consideration of that principle the Supreme Court of the United States has ruled — " It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected." (*Manigault* v. *Springs.* 199 U. S. 473, 480.) That principle was given expression by Chief Justice HUGHES in the later case of *Home Bldg. & L. Assn.* v. *Blaisdell* (290 U. S. 398, 437–438) : " The economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts. * * * The question is not whether the legislative

action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end." (See, also, *Matter of People (Tit. & Mtge. Guar. Co.)*, 264 N. Y. 69, 84.)

The principles of law which were determinative of issues presented in *Finch* v. *Goldstein* (245 N. Y. 300), and *Matter of McGuinness* (290 N. Y. 117), are not decisive in the case at bar where a different problem is presented.

The order should be reversed and the motion by the respondent, Brooklyn City Safe Deposit Company, to vacate the order of Special Term herein, dated March 2, 1944, should be denied, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, CONWAY, DESMOND and THACHER, JJ., concur.

Order reversed, etc.