**UNITED STATES of America and Eldon E. Rolf, Special Agent, Internal Revenue Service, Petitioners-Appellants,**

v.

**Milton R. HENRY, Respondent-Appellee.**

**No. 73–1274.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1973.

Decided Feb. 7, 1974.

Robert E. Lindsay, Tax Div., Dept. of Justice, for petitioners-appellants; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and John P. Burke, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; Ralph B. Guy, Jr., U. S. Atty., Fred M. Mester, Asst. U. S. Atty., Jeffrey D. Snow, Trial Atty., U. S. Dept. of Justice, of counsel.

Milton R. Henry, pro se.

Before EDWARDS and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Appellant, United States, appeals from the denial of a petition to enforce a summons issued by the Internal Revenue Service under Sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954. The summons was entitled "In the matter of the tax liability of Eddie Jackson" and was addressed to "Milton R. Henry, Attorney and Counsellor-at-

law." Critical to the District Judge's denial of enforcement were three facts:

1. Eddie Jackson at the time of the summons was under a multicount indictment alleging conspiracy to violate and violations of the federal narcotic laws.

2. Milton Henry was Jackson's lawyer in the pending narcotics law prosecution.

3. The language of the summons served on attorney Henry was sweeping.

The summons required Henry (the lawyer) to appear before an I.R.S. officer "to give testimony relating to the tax liability" of his client, Jackson, for the years 1968, 1969, 1970, and 1971, and to bring with him and produce for examination, the following:

"1. All records in your custody and control showing the dates and amounts of all fees, retainers, or any other form of deposit or compensation paid to you by or on behalf of Eddie Jackson during the years 1968, 1969, 1970, 1971, and through January 31, 1972, for services performed by you for Eddie Jackson.

"2. All records in your custody and control showing the dates and amounts of all fees, retainers, or any other form of deposit or compensation paid to you by or on behalf of Eddie Jackson during the years 1968, 1969, 1970, 1971 and through January 31, 1972, for services performed by you for individuals, corporations, partnerships, or entities *other* than Eddie Jackson.

"3. All records in your custody and control showing the dates and amounts of any money or property received by you for or on behalf of Eddie Jackson for the years 1968, 1969, 1970, 1971, and through January 31, 1972.

"4. All records in your custody and control showing the dates and amounts of any disbursements made by you for or on behalf of Eddie Jackson during the years 1968, 1969, 1970, 1971, and through January 31, 1972." (Emphasis in original.)

In his motion to quash the summons, Henry stated that he had never met Jackson before December 15, 1971, and was not paid a retainer until January 1972. These statements the government accepted as fact before the District Judge and before us, but it insists upon full enforcement of the summons as to the month of January 1972. In this regard it asserts that the information may be important to a civil net worth tax claim against Jackson.

Henry's motion to quash also advanced the claim of attorney-client privilege and pointed out that the Jackson indictment was brought by the Organized Crime Strike Force of the Attorney General's Office, with whom I.R.S. agents cooperate.

The government's brief asserts that the existence of the narcotics indictment and the fact that the summons happens to be served upon Jackson's lawyer in that prosecution are wholly irrelevant to consideration of the motion to quash the summons. We do not see the matter that way—nor did the District Judge. In granting the motion to quash, he said:

"[I]t is important to emphasize that while the cases herein cited dealt only with the pendency, possibility or probability of criminal prosecution for tax violations, the case at bar has the added, and significant, feature of a pending criminal narcotics conspiracy case. It is the possibility of the interplay between the two that creates what the Court considers to be an invidious situation.

"As to the tax matter alone, it does not appear illogical to conclude that the purpose of the investigation is criminal prosecution only and that, therefore, *Reisman, supra,* [Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)] is controlling. The presence of a special agent does not, of course, per se establish that (*Donaldson, supra,* 534, 535 [91 S.Ct. 544]) [Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971)]. The announced policy of

the Strike Force to utilize Internal Revenue Code tools to pursue alleged narcotic traffickers and the statement of plaintiffs at the hearing that they were interested in ascertaining 'net worth' (a term generally associated with criminal prosecution) casts some doubt on the bona fides of plaintiffs. Nor was there any offer at the time of the hearing or subsequent thereto to dispel this doubt. Unanswered it sustains the Respondent's burden.

"Perhaps more worrisome is the opportunity afforded to Plaintiffs to obtain information, not otherwise discoverable, relating to the pending criminal conspiracy case. It is noted that the summons is not restricted to, for example, an inquiry as to the date and amount of attorney fees paid, but requires that *testimony be given* by Respondent concerning a myriad of matters, i. e., fees paid by or on behalf of the taxpayer, or by him or on his behalf for the benefit of others, any 'property' or money otherwise received, and any disbursements made by Respondent for or on behalf of the taxpayer. It takes no great stretch of the imagination to forecast that such a broad inquiry could result in information that would not only benefit the government in its prosecution of the criminal conspiracy case, but could also result in the deprivation of some of taxpayer's Constitutional and other rights and privileges, including the attorney-client privilege, a privilege recognized by the Supreme Court as a valid defense in the cited cases." (Emphasis in original). (Footnote omitted.)

Like the District Judge, we, too, are concerned about the threat to both Fourth and Fifth Amendment values and to the attorney-client privilege which appears inherent in this case. This circuit has not been eager to restrict the information gathering activities of the I.R.S. in proper pursuance of its tax enforcement function. United States v. Cleveland Trust Co., 474 F.2d 1234 (6th Cir. 1973); United States v. Weingarden, 473 F.2d 454 (6th Cir. 1973); United States v. Stribling, 437 F.2d 765 (6th Cir. 1971); United States v. Artman, 435 F.2d 1375 (6th Cir. 1970); United States v. Held, 435 F.2d 1361 (6th Cir. 1970); United States v. Fruchtman, 421 F.2d 1019 (6th Cir. 1970); United States v. Michigan Bell Telephone Co., 415 F.2d 1284 (6th Cir. 1969).

In each of these cases we upheld the civil summons in a situation where, arguably at least, it could not only serve the purposes of tax collection but might likewise lead in the direction of tax fraud charges.

█ But we point out that in none of these cases was the subject of the tax investigation then under indictment in a pending federal prosecution where the information sought might be of material assistance to the prosecution, nor was the person upon whom the summons was served the lawyer for the subject of pending prosecution in that case.

These distinctions apply with equal force to the two cases most favorable to the government's position. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), and Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In neither case was there a pending criminal prosecution concerning the taxpayer under investigation, nor was the summons addressed to his lawyer in that criminal case.

In the fundamental case interpreting Section 7604(b), a unanimous Supreme Court said:

"[W]e hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution. Boren v. Tucker, 9 Cir., 239 F.2d 767, 772–773, as well as that it is protected by the at-

torney-client privilege, Sale v. United States, 8 Cir., 228 F.2d 682." Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964).

In our instant case the District Judge's finding that "the purpose of the investigation is criminal investigation only" is supported by the facts to which we have already referred and certainly is not "clearly erroneous." It is further buttressed by the fact that the summons as applied to the only month now in issue sought "all records" pertaining to "any money or property received by you for or on behalf of Eddie Jackson." This portion of the summons could not apply to Jackson's civil liability, since the taxable year concerned in the investigation had not ended and Jackson had no civil liability as to any "income" paid on his behalf in January of 1972.[1] But this information obviously could be useful to the government in its pending criminal conspiracy case against the taxpayer.

We note, of course, that the fundamental holding of *Donaldson* was:

"We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." Donaldson v. United States, 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971).

We recognize that in *Donaldson* the criminal prosecution referred to was a criminal tax prosecution rather than, as here, a criminal prosecution wholly independent of the tax laws.

But where, as here, the information sought by the civil summons has an obvious and strong potential for supplying information needed in a pending federal criminal case, we believe the use of the civil summons is as much an

abuse of process as if a criminal tax case had been recommended or had actually been begun.

The judgment of the District Court is affirmed.

---

1. The District Judge did not exclude the possibility that a civil summons directed only to the question of whether a fee or fees had been paid by Jackson to his lawyer, Henry, and if so, in what amount, might be valid

and enforceable, nor do we. *See* United States v. Cromer, 483 F.2d 99 (9th Cir. 1973), and Colton v. United States, 306 F.2d 633 (2d Cir. 1962).