UNITED STATES of America

v.

MELLON BANK, N. A., Respondent.

Appeal of Milton F. MEISSNER,
Intervenor-Respondent.

No. 74–2220.

United States Court of Appeals,
Third Circuit.

Argued May 16, 1975.

Decided Aug. 28, 1975.

Scott P. Crampton, Gilbert E. Andrews, Crombie J. D. Garrett, Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D. C., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for appellee.

R. Kenly Webster, Kennedy & Webster, Edward C. Schmidt, Rose, Schmidt & Dixon, Pittsburgh, Pa., for Milton F. Meissner.

Before STALEY, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from an order permitting the government to enter a safe deposit box and seize the contents in satisfaction of a jeopardy assessment against the lessors of the box.

The United States, acting pursuant to 26 U.S.C. § 7402, instituted suit against Mellon Bank to enforce a jeopardy assessment against the assets of the taxpayers in the Bank's possession. The district court granted the lessor of the box, appellant Milton Meissner, leave to intervene and contest the government's petition. Meissner raised several arguments in opposition to the motion and pressed for discovery. The district court denied Meissner's discovery motions and ruled further that the Anti-Injunction Act, 26 U.S.C. § 7421, divested it of jurisdiction to consider Meissner's counterclaim. In summary fashion, the district court granted the government's motion to enter the safe deposit box and seize the contents.

We conclude that the Anti-Injunction Act does not divest the district court of jurisdiction over counterclaims when the court has jurisdiction over an enforcement petition filed by the United States under 26 U.S.C. § 7402. Accordingly, we reverse the decision of the district court and remand the matter for additional proceedings.

I

On April 9, 1974, the Internal Revenue Service issued jeopardy assessments [1] against Milton Meissner [2] on the basis of alleged deficiencies for the tax years 1970 and 1971. When notices of the levy and seizure were received by Mellon Bank on April 10, 1974, Meissner's safe deposit box was sealed. The government, in its petition in the district court, alleged that notice of the assessments and demand for payments had been made in letters sent to Meissner, in care of his accountants; despite these notices, the taxpayer allegedly continued in his refusal to pay.[3]

On July 26, 1974 the United States filed the instant suit in the district court. Over the government's objection, Meissner was granted leave to intervene.[4] Meissner urged in his answer to the government's motion, that the petition be dismissed (1) because the opening of the box would threaten his fifth amendment rights against self-incrimination,[5]

---

1. 26 U.S.C. § 6861 gives the Internal Revenue Service power to make jeopardy assessments. That section provides in relevant part:

   (a) Authority for making.—If the Secretary or his delegate believes that the assessment or collection of a deficiency, . . . will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency . . . and notice and demand shall be made by the Secretary or his delegate for the payment thereof.

   (b) Deficiency letters.—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment.

   After notice was received, a petition for review of the jeopardy assessment was filed in the tax court by Meissner's attorney pursuant to 26 U.S.C. § 6213 which gives a taxpayer 90 days (or 150 days if he is outside of the country) from the date on which a deficiency letter is received to file a petition with the tax court for redetermination of the deficiency. Except where a jeopardy assessment has been entered, no levy can be made until the tax court has acted on the redetermination petition.

   On March 3, 1975, the tax court stayed its proceedings on the petition for review of Meissner's 1970 and 1971 deficiencies, on the ground that Meissner was the subject of a criminal investigation and that continuation of the civil suit might require Meissner's fifth amendment rights against self-incrimination to be jeopardized.

   No additional information concerning the pending criminal investigation has been made available to this court.

2. The deficiency notice, jeopardy assessments and levy were made against Meissner and his wife Lula Ann with whom he had filed a joint return.

   The safe deposit box was rented by Meissner and his wife jointly.

   Meissner's wife did not seek to intervene and was not represented by counsel in this matter.

3. Attorneys for the intervenor taxpayer and the government stipulated to certain ·facts. Stipulations were reached concerning the government's claim that it sent notice to Meissner's accountants, whose address had been listed by Meissner in the 1970 and 1971 tax returns.

   In addition, taxpayer Meissner contends that he has been a non-resident of the United States since 1970. Although no stipulation concerning this assertion was reached the government concedes that Meissner is presently outside of the United States.

4. The government characterizes Meissner as a fugitive since he did not appear before a federal grand jury in New York investigating securities violations. On the basis of his alleged status as a fugitive for failure to comply with that subpoena, the government would have us deny Meissner access to this forum. Even if we were to assume that we could deny access to a litigant labeled as a fugitive by another jurisdiction, we would decline to deny Meissner access to this forum in this case. The government has simply presented us with no factual basis for judging whether Meissner is a fugitive.

5. In the district court Meissner gave no factual basis for the assertion that his fifth amendment privilege against self-incrimination would' be jeopardized by an order directing that the

(2) because the tax deficiencies were not due and owing, (3) because the government failed both to give proper notice of the levy, and to comply with the statute and regulation concerning jeopardy assessments, and (4) because the order sought by the government was unnecessary and therefore beyond the district court's power to issue under 26 U.S.C. § 7402.[6]

By discovery motions Meissner sought to inspect all Internal Revenue Service documents relevant to his case. The motion was denied.[7]

The district court granted the government's petition to open the safe deposit box. The instant appeal followed.

## II

26 U.S.C. § 7402(a) [8] gives the district court jurisdiction to issue orders "necessary or appropriate for the enforcement of the internal revenue laws." When the United States attorney petitioned the district court for an order seeking to open Meissner's safe deposit box, the district court clearly had jurisdiction under § 7402(a). The order the government sought was necessary and appropriate to enforce the government's jeopardy assessment under 26 U.S.C. § 6861 [9] against a third party bank in possession of the taxpayer's property.[10]

box be opened. Presumably, he is concerned that information which *might* be contained in the box would jeopardize his position in the pending criminal investigation. Meissner, however, failed to articulate this or any other connection between the criminal investigation and his fifth amendment rights. He also failed to apprise the district court or this court of the status of that investigation.

**6.** In his answer in the district court Meissner contended that the opening of the safe deposit box was unnecessary and inappropriate at this time. The government revenues could not be jeopardized, he asserted, since the safe deposit box had already been sealed. Until the tax court makes its final redetermination Meissner argues that it is necessary only to *seal* the box.

**7.** Meissner's Rule 37 motion to compel production of documents sought, among other things, all documents relating to the basis of the jeopardy assessment, all documents relating to the delegated authority of the official making the jeopardy assessment and all documents relating to the type of notices sent to the taxpayer through his accountants.

The district court denied the motion indicating that the district court "was not an appropriate forum in which to obtain said documents . . . [the court ordered further that] . . . the documents [were] to be sealed and maintained as a part of this record, not to be opened absent an appropriate order of Court." (Order of district court dated October 8, 1974).

**8.** 26 U.S.C. § 7402(a) specifically provides that the federal district courts have jurisdiction "to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or*

*appropriate for the enforcement of the internal revenue laws. . . ."* (Emphasis added.)

Although this statute gives broad power to enforce the internal revenue laws, it has been applied in almost no cases. *See: United States v. Shaheen,* 445 F.2d 6 (7th Cir., 1972) (where the Court of Appeals reviewed an order of injunction *ne exeat republica.*)

26 U.S.C. § 7402(b) in contrast, which gives the district court power to enforce Internal Revenue Service summons has been applied in numerous cases. § 7402(b) provides in part:

If a person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court . . . shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

*See* generally, *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1972); *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970); *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1963); *United States v. Henry,* 491 F.2d 702 (6th Cir., 1974); *United States v. Diracles,* 439 F.2d 795 (8th Cir., 1971); *United States v. Roundtree,* 420 F.2d 845 (5th Cir., 1969); *United States v. Ahmanson,* 415 F.2d 785 (9th Cir., 1969).

**9.** *See supra,* n. 1.

**10.** 26 U.S.C. § 6332(a) requires "any person in possession of . . . property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights . . . to the Secretary or his delegate . . . ."

26 U.S.C. § 6331 gives the Secretary or his delegate power to serve a notice of levy, and

The district court had discretion to allow Meissner to intervene.[11] Having granted Meissner's petition to intervene in a suit over which the court had jurisdiction under § 7402, the court also had jurisdiction over any challenges to enforcement of the jeopardy assessment Meissner might raise.[12]

The district court erred in concluding that it was without jurisdiction to consider Meissner's counterclaims on the basis of the Anti-Injunction Act. 26 U.S.C. § 7421[13] divests the district court of jurisdiction over any "suit for the purpose of restraining the assessment or collection of any tax." Meissner did not sue to enjoin the assessment or collection of any tax. In fact he filed no suit at all. He attempted merely to raise a defense against an affirmative action in which the government sought judicial enforcement of a jeopardy assessment. In none of the cases cited by the government was § 7421 applied to bar a taxpayer from raising a defense in a case where the court had jurisdiction over an Internal Revenue Service enforcement petition.[14]

Having allowed Meissner to intervene in a suit over which the court had jurisdiction under 26 U.S.C. § 7402, the court also had jurisdiction to consider Meissner's challenge to that motion.

### III

Although the district court had jurisdiction to consider any challenge Meissner might raise, we have doubts about the appropriateness of at least some of the claims he has raised.[15] As such we

power to seize and distrain any property subject to levy. The statute provides:

> (a) . . . If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax . . . by levy upon all property . . . belonging to such person . . . . If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

26 U.S.C. § 6331(b) gives power to distrain and seize by any means any goods subject to levy.

In *United States v. Sullivan*, 333 F.2d 100, 116 (3d Cir., 1964), this court stated: "Levy is a *summary, non-judicial* process, a method of self-help authorized by statute which provides the Commission with a prompt and convenient method for satisfying delinquent tax claims." (Emphasis added.) Although a levy is generally self-executing, the bank refused to allow the government to break into Meissner's safe deposit box. The government was, therefore, required to seek a court order in this case.

11. Meissner's petition for intervention comes within Rule 24(b) F.R.Civ.P. dealing with permissive intervention. Meissner's claim does not fall within Rule 24(a) F.R.Civ.P. which lists three tests for determining when a party can intervene as a matter of right.

Rule 24(b) gives the district court discretion to *permit* intervention where the intervention will not cause undue "delay or prejudice" to the rights of the original party.

Although there were considerable problems with all of the claims Meissner proposed to raise on intervention, we cannot say the district court committed an abuse of discretion when it permitted Meissner to intervene.

12. Although we hold that the district court had jurisdiction, we do not decide whether Meissner in fact presented appropriate challenges to the motion to open the safe deposit box.

13. 26 U.S.C. § 7421(a) provides:

> . . . [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any act by any person, whether or not such person is the person against whom the tax [is] assessed.

14. The government relies heavily on *Enochs v. Williams Packing Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) recently reaffirmed as the leading case on the Anti-Injunction Act in *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) and *Alexander v. "American United" Inc.*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). In each of these cases, the taxpayer sought the court's jurisdiction to enjoin the collection of a tax. Similarly, in all of the cases cited in the government's brief, 26 U.S.C. § 7421 was used to deny injunctive relief to the *taxpayer.*

15. *Self-Incrimination:* With respect to Meissner's fifth amendment self-incrimination claims, we are uncertain whether Meissner has a sufficient possessory interest in the contents of the safe deposit box to assert those rights within the terms of *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548

do not suggest what procedures,[16] if any, would be required in the district court on remand.

Upon remand, the district court is directed to consider the merits of taxpayer's challenges. If the district court concludes that taxpayer has raised *no* issue which could be considered an *appropriate* challenge to the instant enforcement petition, it would not be an abuse of discretion to grant the government's motion in summary fashion.

## IV

For the foregoing reasons, the judgment of the district court is reversed and the matter remanded for further proceedings not inconsistent with this opinion.

(1971). *But see:* dissenting opinion of Justice Brennan in *Couch,* 409 U.S. at 337, 93 S.Ct. 611.

With respect to self-incrimination, we have held that a witness cannot be subpoenaed to produce potentially incriminating *information* after the government has recommended prosecution. *United States v. Mahady & Mahady,* 512 F.2d 521, 525 (3d Cir., 1975). In this case Meissner has not specified the present status of the criminal investigation but perhaps more problematic is the fact that Meissner is not faced with a subpoena seeking information. Through a jeopardy assessment and levy the Internal Revenue Service is pursuing money and property, not information.

Quite clearly the initial burden to challenge an Internal Revenue Service motion is on the taxpayer. *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) where the court stated in the context of a § 7402(b) subpoena enforcement "the burden of showing an abuse of the court's process is on the taxpayer . . . ." Although Meissner might (we do not decide) have valid fifth amendment claims, he has not yet supplied a sufficient factual basis to meet his burden of proof.

*Unnecessary Under § 7402:* Meissner also challenged the requested order as unnecessary and inappropriate under § 7402 since the government revenues were adequately protected by sealing the safe-deposit box. This argument is specious since the levy statute, 26 U.S.C. § 6331, *supra* n. 10 specifically gives the United States power to seize and distrain items subject to levy. Also, the secretary is given power to sell seized items which are likely to "become greatly reduced in price or value." 26 U.S.C. § 6336. *See:* 26 U.S.C. § 6863(b)(3)(B). The United States cannot seize or sell items which are beyond its reach in a safe-deposit box.

*Deficiency Not Owing:* Meissner asserts that the underlying deficiencies are not due. Even though the Anti-Injunction Act does not divest the district court of jurisdiction to consider this claim, the policy behind that statute renders Meissner's claim meritless. Within the terms of *United States v. Powell,* 379 U.S. at 58, 85 S.Ct. 248, we do not think this is an *"appropriate"* challenge to the government's

motion. Meissner clearly has not alleged abuse of the administrative process or harassment sufficient to come within the terms of *Sherman v. Nash,* 488 F.2d 1081 (3d Cir., 1973).

*Non-Compliance with the Code:* Meissner finally asserts that the government has failed to comply with the Internal Revenue Code and the regulations. We agree that the government has the initial burden to show that it has complied with relevant statutes. By analogy to subpoena enforcement suits under § 7402(b) the government need only show that (1) a jeopardy assessment has been made, (2) that opening the safe deposit box would be appropriate to enforce the levy, (3) that the administrative steps required by the Code have been followed. *See: Powell,* 379 U.S. at 57–58, 85 S.Ct. 248. Meissner offered no support for his claim that the Code was not followed. To the extent that discovery might have verified any potentially meritorious contention Meissner might have raised in this context, it would not have been an abuse of discretion to grant discovery.

**16.** We note that the district court denied all discovery and sealed the records supplied by the government. *See supra* n. 7. Discovery was denied on the erroneous assumption that the court was without jurisdiction to require the government to do anything.

Quite clearly, the district court had power to require any procedures—including more extensive hearings and discovery—it felt would be sufficient to deal with any possibly meritorious issues raised by Meissner.

On remand the district court, of course, will have discretion to grant or deny Meissner's request for discovery on the issue of the government's failure to comply with the Internal Revenue Code. *See, supra* n. 15.

On the issue of discovery *see generally: United States v. Roundtree,* 420 F.2d 845, 851–52 (5th Cir., 1969); *United States v. Ahmanson,* 415 F.2d 785, 786 (9th Cir., 1969); *United States v. Benford,* 406 F.2d 1192, 1195 (7th Cir., 1969); *United States v. Schmidt,* 360 F.Supp. 339, 343 (M.D.Pa., 1973). Although these cases arise in the context of § 7402(b) subpoena enforcement rather than § 7402(a) levy enforcement, the discussion of discovery is at least relevant.